Redacted

## AFFIDAVIT OF SPECIAL AGENT JUSTIN T. DELANEY IN SUPPORT OF SEARCH AND ARREST WARRANTS AND CRIMINAL COMPLAINT

I, Justin T. Delaney, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since February 2020, and I am presently assigned to the Providence Field Office of the Boston Field Division.  My responsibilities are to investigate and prevent offenses involving the unlawful use, manufacture, and possession of firearms and explosives, as well as to investigate violations of federal arson statutes.  I attended and successfully completed the Department of Homeland Security Criminal Investigator Training Program and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Brunswick, Georgia.

2.      Previous to my employment as a Special Agent with the ATF, I was employed with the Massachusetts Probation Service from 2015 to 2020, most recently as a Probation Officer at the Westboro District Court. I earned a Bachelor of Science degree in criminal justice from Westfield State University in 2012.

3.      While employed as a Special Agent, I have investigated violations of local, state, and federal criminal statutes; made arrests, prepared search and arrest warrant affidavits; interviewed defendants, witnesses, and informants; and seized currency, firearms, narcotics, and other evidence related to criminal investigations. I have experience and training in firearms and narcotics trafficking cases, gang investigations and the utilization of informants and cooperating witnesses to investigate firearms and narcotics trafficking and other organized criminal activity.

### PURPOSE OF AFFIDAVIT

4.      Based upon facts presented in this affidavit, there is probable cause to believe that Ronald ANDRUCHUK (Y.O.B. 1984)(hereinafter "ANDRUCHUK"),

1

committed violations of federal law, namely, is currently in possession of firearms while being a prohibited person, to with an unlawful of or addicted to any controlled substances, in violation of 18 U.S.C. § 922(g)(3), has made false statements in an application to purchase firearms, in violation of 18 U.S.C. § 922(a)(6), and caused false records to be kept by a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A), collectively, the "Subject Offenses." This affidavit is being submitted in support of a Criminal Complaint and Arrest Warrant charging ANDRUCHUK with the Subject Offenses.

5.     Additionally, because probable cause exists to believe ANDRUCHUK committed the aforementioned Subject Offenses, for the reasons set forth below, probable cause also exists to believe that evidence, fruits, and instrumentalities of these Subject offenses will be found in the following places, also set forth in Attachment A:

i)   the residence of 1746 Tarkiln Road in Burrillville, Rhode Island, which is further described as an off-white-colored two-story residence, with black shutters. The residence features a stone exterior on the first floor with four white pillars, and a stone walkway leading to a red colored front door;

ii)  the person of Ronald ANDRUCHUK (Y.O.B. 1984);

iii) the cellular telephone assigned call number (401) 390-8594 ("Target Phone #1"), which is believed to be Ronald ANDRUCHUK's cellular telephone;

iv) a 2008 Silver Jeep Compass SUV bearing RI Temporary Registration (204766), (VIN# 1J8FT47W88D551597).

Further, probable cause exists to believe that items described more fully below and in Attachment B will be found in the locations set forth above and in Attachment A.

6.     The information in this affidavit comes from my personal observations and investigation, my training and experience, information obtained from other law enforcement agents with experience in the investigation of firearms and narcotics distribution, and information obtained from other sources as specified in the body of

this affidavit. The affidavit is intended to show that there is sufficient probable cause for the requested warrants. This affidavit includes only those facts I believe are necessary to establish probable cause for the issuance of the requested warrant and does not include all of the facts uncovered during the investigation.

## PROBABLE CAUSE THAT ANDRUCHUK COMMITTED THE TARGET OFFENSES

7.     In the fall of 2021, through a number of investigative queries I became alerted to an individual subsequently identified as ANDRUCHUK, who had been purchasing large quantities of firearms during a period of time between July 2021 and November 2021. A review of multiple sale reports (MSRs) filed by Federal Firearms Licensees (FFLs) **revealed eighteen multiple sale purchases and that ANDRUCHUK had purchased approximately one hundred and sixty-nine firearms between the months of July 2021 and November 2021**[1]. Based upon training and experience, and through conversations with senior agents, I know that purchases of large quantities of firearms are consistent with indicators of potential illegal firearm-trafficking activities.

8.     Through contact with multiple FFLs from whom ANDRUCHUK had purchased firearms, I learned that ANDRUCHUK consistently explained that he had made a significant profit through investments in cryptocurrency and was looking to start a hobby by collecting firearms.  Investigative queries revealed that ANDRUCHUK then resided at 68 Mica Avenue Cranston, RI 02920. I then contacted Special Investigative Unit (SIU) Detective Ronald Fuoroli of the Cranston Police Department (CPD) who provided me with information regarding ANDRUCHUK's suspected marijuana use in 2018 and drugs arrest in 2019.

### *April 4, 2018 – Suspected Marijuana Use*

---

[1]ATF requires FFLs to report the sale of two or more handguns if they occur at the same time or within five consecutive business days of each other, which generates the MSRs.

9.     On April 4, 2018, while conducting surveillance in the city of Cranston RI, Detective Daniel Dempsey of the CPD observed several vehicles stopped/pulled over to the side of the road and a black sport utility vehicle (SUV) passing the vehicles. The black SUV had white strobe lights activated and blinking from its upper windshield. The vehicle traveled at a high rate of speed towards Terrace Avenue in Cranston and Detective Dempsey notified other SIU Detectives in the area to be aware of the vehicle. The vehicle was then observed traveling into Providence RI, where it was followed to the parking lot of Central High School located at 70 Fricker Street Providence, RI 02903.

10.     Detective Fuoroli approached the vehicle and identified the operator as Ronald ANDRUCHUK of 68 Mica Avenue Cranston RI 02920. ANDRUCHUK stated he was a physics teacher and was late for class. Information was later obtained from a school resource officer who indicated ANDRUCHUK was not a teacher, but a mentor at the school. As Detective Fuoroli spoke with ANDRUCHUK, he detected a strong odor of marijuana coming from ANDRUCHUK and from within the vehicle. Detective Fuoroli then asked ANDRUCHUK about the odor of marijuana and ANDRUCHUK stated that he was a RI medical marijuana patient and presented his medical marijuana card. Inside the vehicle was bits of green leafy substance consistent with that of marijuana on top of the center console of the vehicle. Also in the vehicle was an ASP baton, handcuffs, pepper spray, and two (2) two-way radios. Additionally, ANDRUCHUK stated that he was a part-time security guard and uses the lights on his vehicle as part of his duties. ANDRUCHUK was then released from the scene without charges.

11.     Based upon training and experience, I know that the use or possession of marijuana remains unlawful under federal law, regardless of whether it has been legalized or decriminalized for medical or recreational purposes in the state in which one resides. I also know that pursuant to 18 U.S.C. § 922(g)(3) it is a violation of federal law for a person who is an unlawful user of, or addicted to, marijuana or any

depressant, stimulant, narcotic drug, or any other controlled substance to purchase – or attempt to purchase – firearms or to be in possession of firearms. Additionally, based upon my training and experience, I know that individuals in possession of medical marijuana cards commonly engage in the consumption of marijuana on a regular basis.

### August 23, 2019 – Drug Arrest

12.     On August 23, 2019, at approximately 2138 hours, Detective Dempsey observed a drug transaction in the area of Mutual Gas on Dyer Avenue in the city of Cranston RI. Upon completion of the transaction, one of the suspect vehicles began to leave the area and was stopped by SIU Detectives. The operator of the vehicle was identified as ANDRUCHUK and was found to be in possession of numerous oxycodone pills, morphine, and naloxone. ANDRUCHUK was subsequently taken into custody, and later gave a recorded statement to detectives that he had just purchased the oxycodone pills from the other suspect, and that he has a substance abuse problem. ANDRUCHUK was subsequently arrested on three counts of Possession of Schedule I-V Controlled Substance.

13.     I spoke with Detective Fuoroli regarding the disposition of ANDRUCHUK's case and was informed that ANDRUCHUK was given a deferred sentence for two years, and the charges have since been expunged from his record.

14.     As previously note in this affidavit, I know that it is a violation of federal law for a person who is an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance to be in possession of firearms. While there is no record that ANDRUCHUK was in possession of firearms at the time of his arrest, the arrest is noteworthy because ANDRUCHUK was not only illegally in possession of controlled substances but admitted to illegally purchasing them from another suspect and, significantly, admitting having a substance-abuse problem.

*15.*     On January 8, 2022, I was contacted by Detective Fuoroli and informed that ANDRUCHUK had moved from 68 Mica Avenue in Cranston to a residence at 1746 Tarkiln Road Burrillville RI 02859. Investigative queries revealed that on November 24, 2021, ANDRUCHUK and his wife ███ Andruchuk purchased the house in full for four hundred and eighty-five thousand dollars.

### May 11, 2021 – Cranston PD – Call for Mental Health Distress

16.     I reviewed CPD Incident Report 21-25307-OF, and learned that on May 11, 2021, Cranston officers were dispatched to 68 Mica Avenue after ███ Andruchuk called about her husband Ronald ANDRUCHUK and her concerns regarding his mental health. ███ Andruchuk reported her husband had been displaying signs of mental health distress, and that he sees two different psychiatrists and has been doing so for a few years. She informed officers that ANDRUCHUCK yells and becomes argumentative for hours on end. She stated that she does not feel unsafe in her home but she felt she needed to contact police to document her concerns as she is becoming more and more frustrated with his behavior.

17.     Officers spoke with ANDRUCHUK, who stated that he and his wife have been living above his parents for a while now as they attempt to get into their own home. He said there has been a lot of friction with his in laws and his own family. He also stated that he does not wish to harm himself and there has never been any physical confrontation with his family. ███ Andruchuk and her father-in-law ███ ███ (ANDRUCHUK's father) informed officers that ANDRUCHUK needs psychiatric help and they are unable to deal with his outbursts. ███ Andruchuk indicated to officers that she will be contacting ANDRUCHUK's therapist and will updated them on his behavior.

18.     This concerning incident is worthy of note because approximately two months after it was reported, ANDRUCHUK began purchasing large quantities of firearms.

### December 10, 2021 – Millbury Police Department Investigation

19.     Through investigative queries, I learned that two firearms had been recovered on December 10, 2021, by the Millbury Police Department. I reviewed the ATF Firearm Trace Summaries submitted by ATF Special Agent Nam Cho of the Worcester, Massachusetts Satellite Office and learned that ANDRUCHUK was noted as the possessor of the following recovered firearms: Ruger Model: LCP .380 Caliber Pistol Serial Number: 380662743 and North American Arms Model: NAA22 .22 Caliber Pistol Serial Number: L228008.

20.     Upon further review of the ATF Firearm Trace Summaries, I learned that ANDRUCHUK was the original purchaser of the Ruger LCP .380 Caliber Pistol. According to trace summary T20210570038, ANDRUCHUCK purchased the firearm on September 3, 2021, from D&L Shooting Supplies located at 3314 West Shore Road, Warwick, RI 02886. According to trace summary T20210570070, the original purchaser of the North American Arms Model: NAA22 .22 Caliber Pistol was ██████████ (Y.O.B. 1940) on August 20, 2020, from D&L Shooting Supplies.

21.     I reviewed Millbury Police Department Incident Report Number 21-569-OF and learned that officers were dispatched to the Tractor Supply Company store located at 99 Worcester-Providence Turnpike, for the report of a customer who was believed to have secreted a handgun in the drop ceiling of the store's men's restroom. Additionally, store employees located two wet boot prints, located on the toilet seat inside the men's restroom.

22.     Subsequent investigative activities, including interviews and crime scene investigation, revealed two firearms, suspected drugs and other items were located in the drop ceiling of the men's bathroom at the Tractor Supply Company store. These items were subsequently located shortly after a male, later identified as ANDRUCHUK, who had occupied the same bathroom that night, exited the store and departed the area. According to the report, Massachusetts State Trooper Timothy Harris had spoken with

the adult male who exited the store after speaking to occupants of the vehicle in which the adult male arrived, and the identification was made via ANDRUCHUK's RI driver's license. Officers with the Millbury Police Department located items including, but not limited to:

a.      One (1) Black Ruger, Model: LCP II .380 Caliber Pistol Serial Number :380662743, with two magazines containing 12 rounds of ammunition.

b.      One (1) Silver North American Arms .22 Caliber Revolver Serial Number: L228008, containing 4 rounds of .22 Caliber ammunition.

c.      Three (3) rounds of ammunition (One (1) .44 caliber round, One (1) .22 caliber round, One (1) .223 caliber round).

d.      Two (2) green flashlights (one (1) with a clear lens, one (1) with a yellow lens).

23.      According to the report, while conducting an inventory of items located on scene, officers removed a portion of one of the green flashlights, which was believed to have provided access to the flashlight's battery compartment. Upon further analysis, the removable small portion revealed a false bottom and storage compartment containing numerous orange pills in varying levels of completeness inscribed with the number "20," and three blue pills were discovered bearing inscriptions of "M" and "15." The same portion was removed on the other green flashlight revealing a white powdery substance. All of these substances were separated, placed into evidence bags, and were submitted to the Massachusetts State Police crime laboratory for testing.

24.      Through conversations with Officer Aquafresca - the investigating officer of the Millbury Police Department - the silver North American Arms .22 Caliber Revolver, Serial No. L228008, was located in the ceiling, with the two flashlights having been placed directly on top of the revolver. According to the Millbury Police Department, the black Ruger, Model: LCP II .380 Caliber Pistol, Serial No. 380662743,

was located within one to two feet of the aforementioned revolver, the two flashlights, and the other assorted items located in the ceiling.



25.     Officer Aquafresca also noted that through additional investigative research, it was learned that ANDRUCHUK had never been issued a Massachusetts License to Carry Permit (LTC) which would enable him to lawfully carry a concealed weapon on his person in the Commonwealth. I conducted a separate query through the Criminal Justice Information System (CJIS) and confirmed that ANDURCHUK and his wife███████ ANDRUCHUK do not have active LTC Permits in Massachusetts. Based upon the information noted above, there is probable cause to believe that both firearms were in ANDRUCHUK's possession and, given their placement within the ceiling, they

were purposefully placed there. While one of the firearms did not trace back to
ANDRUCHUK as the original purchaser, training and experience has shown me that
firearms are often sold privately or resold to FFL's, which are then made for sale again
to those who can lawfully purchase them.

26.     Based upon training and experience, and through conversations with
senior agents, the images provided by the Millbury Police Department of the suspected
drugs recovered from the two flashlights, appear to be amounts consistent with
personal consumption. Posted below are photographs taken by the Millbury Police
Department of the firearms and suspected drugs located on December 10, 2021:











*January 21, 2022 – Interview of Tractor Supply Store Manager* ███

27.     On January 21, 2022, I, along with ATF Task Force Officer (TFO) Dennis Smith, conducted an interview of ███ ("███"), the Manager of the Tractor Supply Store in Millbury MA who was on duty during the incident involving ANDRUCHUK on December 10, 2021.

28.     ███ stated she was familiar with the male customer, later identified as ANDRUCHUK, because he had been shopping in the store for several weeks prior to the incident on December 10, 2021. She stated that he would arrive at the store shortly before closing time, which was 9:00 p.m., and begin shopping, walking down each individual isle before going to the registers to complete his purchase. She stated that he was a member of company's customer rewards program and provided your affiant with the customer identification number (121933000006) on the account.

29.   ▮   gave me a receipt dated December 10, 2021, for customer identification number: 121933000006, and furnished the following information regarding that account:

- Ronald Andruchuk – 68 Mica Avenue Cranston RI, 02920 – 401-390-8594 – RonaldArmandAndruchuk@zoho.com[2]

30.   ▮   stated that on December 10, 2021, the male customer arrived in the store shortly before 8:30 p.m. and began shopping. She recalled informing her staff that their "Friday night friend" was in the store, since other employees had seen the same male customer frequent the store over a number of weeks around closing time. She stated that given the customer's suspicious activity, she had concerns that he was shoplifting. Additionally, she noted that a woman with three children entered the store shortly after the male customer entered, then approached the male customer and had a brief conversation with him. Thereafter, the woman and three children walked toward and entered the woman's rest room. A short time later, ▮ saw the woman and three children exit the woman's rest room, leave the store, and return to a car parked in the handicapped parking spot in the parking lot.

31.   ▮   said that while conducting the store's standard closing procedures, she exited the rear of the building and saw a Massachusetts State Trooper parked in the area. She stated she approached the state trooper, explained her concerns regarding the customer's suspicious activity, and asked if the trooper could check on the vehicle in which the customer had arrived, which the Trooper did. [The vehicle was identified as a blue 2017 Nissan Pathfinder SUV bearing RI reg. SM430 which was, according to what the woman, ▮ Andruchuk, told the Trooper, was registered to her father].

---

[2] ANDRUCHUK'S previous address of 68 Mica Avenue Cranston, RI 02920, and the phone number of 401-390-8594, was provided to the FFLs as contact information during the purchases of firearms.

32.     ▮▮ stated that when she went back inside the store, she observed one of the three children from earlier, a young male, walk into the store and speak with the adult male customer. She recalled that minutes later the same adult male customer approached her and asked if he could use the restroom, and she directed him to the men's restroom in the store. She stated that approximately ten to fifteen minutes after the adult male customer was directed to the men's restroom, the adult male customer came to the front of the store and purchased the products in his carriage.

33.     She recalled observing that the adult male customer had a flashlight attached to the waist of his pants when he was in the store that night. She stated she remembered it because it was similar to flashlights that are sold in the store. She could not remember if she saw the adult male customer in possession of a second flashlight. The Millbury police report indicates that ▮▮ identified one of the green flashlights found in the drop ceiling as being exact to that which she observed hanging from the male's waist, specifically because it is one of the items sold by her store.

34.     She stated that after the adult male customer left the building, she was approached by a store employee who reported there were boot prints on the seat of the toilet in the men's restroom. She stated she then used a ladder to check the drop ceiling in the men's restroom and, in the ceiling, she located an empty yellow product box, and saw what she believed was the grip of a handgun. She stated that upon seeing what she believed was a handgun, she descended the ladder and contacted the police.

35.     Additionally, she stated that at the time the adult male customer requested to use the restroom, he was the only customer in the store. She also made note that at approximately 8:00 p.m., she cleaned both the men's and women's restrooms and there were no boot prints on the toilet seats in either restroom.

36.     She also noted that approximately five to ten minutes after the adult male customer left the store, the store received a phone call from the same adult male customer. ▮▮ said the adult male customer stated he was just in the store and believed

his son left his wallet behind. She stated she informed the customer that the store was closed for the evening, and that they would have to return the next day to look for the wallet. ■■■ stated that she received this phone call prior to the discovery of boot prints in the men's restroom and the items in the ceiling.

37.     ■■■ noted that ANDRUCHUK was the last customer in the store and the last customer to use the men's restroom before the store closed and the firearms and suspected drugs were discovered. Additionally, the Massachusetts State Trooper who, upon ■■■'s request, interacted with the vehicle in which ANDRUCHUK arrived, subsequently spoke with the male who exited the store before closing, who identified himself via his Rhode Island driver's license as Ronald ANDRUCHUK.

38.     ■■■ provided a written statement to the Millbury Police Department on the night of December 10, 2021, which mirrors the information provided to TFO Smith and myself.

39.     I reviewed subscriber information and toll records for phone number 401-390-8594, which revealed ANDRUCHUK as the customer and subscriber name for the account affiliated with that phone number. A review of phone calls placed by phone number 401-390-8594 revealed a call made to phone number 508-865-5350 on December 10, 2021, at 2125 hours. I conducted an internet search of phone number 508-865-5350 and learned that it is the store number for the Tractor Supply Store located at 99 Worcester-Providence Turnpike Millbury, MA 01527. I will note that according to Millbury Police Department Incident Report Number 21-569-OF, the call for service for the suspected firearm came into the police station at 2136 hours, approximately nine minutes after ANDRUCHUK's call to the Tractor Supply Store.

40.     Based upon training and experience, and conversations with senior agents, and common sense, individuals who are in possession of illegal items - such as drugs or illegally possessed firearms - will often discard or hide those items if they believe law enforcement is present in their general vicinity, fearing that those items will

be found on their person. Additionally, there is substantial reason to believe that ANDRUCHUK hid the firearms because he knew he could not lawfully carry them in Massachusetts and, if he were subjected to a search by law enforcement, the firearms would have been found on his person. Additionally, I know that individuals involved in the unlawful use of drugs will often hide or conceal them in items to avoid suspicion of possession and seizure of said drugs by law enforcement.

41.     Based upon information provided by ████ to ATF and Millbury Police Department investigators, in addition to the information noted in the Millbury Police Department Incident Report, there is probable cause to believe that ANDRUCHUK was unlawfully in possession of two firearms and controlled substances on the night of December 10, 2021, and that he traveled across state lines from Rhode Island into Massachusetts with said items. Additionally, at the time he possessed the controlled substances and firearms in Massachusetts, ANDRUCHUK also simultaneously unlawfully possessed firearms in Rhode Island as a user of those same controlled substances -as previously noted, ANDRUCHUK had purchased approximately one hundred and sixty-nine handguns between the months of July 2021 and November 2021 which, based on experience and common sense, are being stored, in whole or in part, in his residence at 1746 Tarkiln Road in Burrillville, Rhode Island.

### Trash Pull – ANDRUCHUK Residence – January 28, 2022

42.     On January 28, 2022, ATF TFO Smith, Pawtucket Police Department Special Squad Detective Jeffrey Furtado, and myself conducted a trash pull from ANDRUCHUK'S residence 1746 Tarkiln Road Burrillville, RI 02830. Prior to the operation, surveillance was established in the area of the residence at approximately 0730 hours, and I observed two trash barrels placed at the end of the driveway of 1744 and 1746 Tarkiln Road, directly next to the mailboxes that were adjacent to Tarkiln Road. One barrel had a dark colored lid, while the other barrel had a yellow lid.

43.     At approximately 0900 hours, TFO Smith and PPD Special Squad Detective Furtado approached the end of the driveway along Tarkiln Road. Detective Furtado then removed several black trash bags from the barrel with the dark-colored lid.  Investigators later separated the black trash bags and methodically searched each bags' contents for any evidence indicative of unlawful drug use and possession of firearms. The contents of the trash bags included, but were not limited to, empty ammunition boxes, empty boxes for firearm magazines of varying calibers, other empty boxes for various firearms accessories, and various paperwork in the name of Ronald and ███████ ANDRUCHUK.

44.     During the search of one of the trash bags, ATF TFO Smith located the following items:

- One (1) black Velcro wallet.

- Earnings Statement addressed to Ronald Andruchuk – 68 Mica Avenue Cranston, RI 02920 from Davinci Center for Community Progress (470 Charles Street Providence, RI 02904) for Pay Date 01/07/2022. The Earnings Statement was already ripped into two separate pieces when located inside the trash bag.

- One (1) Walkers Ultra Ear BTE (Hearing Enhancement) empty box. An internet search of the product revealed it is a hearing enhancement device.

45.     TFO Smith conducted a search of the black Velcro wallet and located a small piece of paper which was wrapped up. When TFO Smith unwrapped the small piece of paper, he located small broken orange pieces which, based upon training and experience, appeared to be a portion of an orange-colored pill and was of the same color as the orange-colored pills located inside one of the two flashlights found in the ceiling tiles of the men's bathroom at the Tractor Supply store on December 10, 2021.

46.     TFO Smith weighed and photographed the evidence. The weight of the evidence was not substantial enough to register a weight on the scale. TFO Smith conducted a field test of the evidence which yielded positive results for Amphetamines

which I know to be a schedule II-controlled substance. The evidence was subsequently submitted by TFO Smith to the Rhode Island Department of Health for additional analysis. I photographed the evidence, pictured below:









*Laboratory Analysis and Results*

47.     On February 7, 2022, I obtained and reviewed toxicology examination reports for suspected drugs recovered during the incident involving Ronald ANDRUCHUK on December 10, 2021, as previously noted in Paragraph 21 et seq., from the Millbury Police Department. The toxicological examination of the suspected drugs was conducted by The Commonwealth of Massachusetts, University of Massachusetts Medical School Drug of Abuse Laboratory, located at 55 Lake Avenue North Worcester, MA 01655.

48.     The following evidence was analyzed, and yielded the following results:

- W21-03207/21-195-PR (UMass Property Number/MPD Property Number): **Powder –** found to contain **COCAINE.**

- W21-03208/21-194-PR (UMass Property #/MPD Property Number): **1 Tablet –** found to contain **OXYCODONE.**

W21-03209/21-193-PR (UMass Property #/MPD Property Number): **Tablet Fragments and Powder** – found to contain **COCAINE and an AMPHETAMINE**.

49.     Based upon training and experience, I know that Cocaine, Oxycodone, and Amphetamines are schedule II-controlled substances which are known as drugs with a high potential for abuse, use of which often leads to psychological or physical dependence. As noted in Paragraph 12, ANDRUCHUK had previously been arrested for possession of numerous Oxycodone pills in 2019 and admitted to law enforcement that he illegally purchased them and had a substance abuse problem.  Additionally, as noted in Paragraphs 36 – 40, the remnants of a suspected orange-colored pill that was recovered from ANDRUCHUK's trash on January 28, 2021, field-tested positive for amphetamines as well.

### Review of Firearm Transaction Records – November 17, 2021

50.     I reviewed an ATF Firearm Transaction Records (ATF Form 4473), that was completed by ANDRUCHUK on November 17, 2021, at MidState Gun Company, located at 1200 Tiogue Ave Coventry, RI 02816, for the purchase of six firearms.[3] Under federal law, anyone attempting to purchase firearms from an FFL must complete an ATF F 4473 prior to completing the transfer of firearms.   The information entered on the ATF F 4473 is submitted to the National Instant Criminal Background Check System (NICS)[4] for review and verification. As a condition of being licensed as an FFL, all FFLs

---

[3] The form is used by FFLs to determine if they may lawfully sell or deliver a firearm to prospective purchaser, and to alert the purchaser of certain restrictions on the receipt and possession of firearms.

[4] The NICS conducts background checks on people who want to own a firearm or explosive, as required by law. When a person tries to buy a firearm, the prospective buyer fills out the ATF Form 4473 and the FFL contacts NICS and relays that information to the NICS. The NICS staff performs a background check on the buyer. That background check verifies the buyer does not have a criminal record or isn't otherwise ineligible to purchase or own a firearm.

are required to maintain the ATF F 4473 for a period of five years once a NICS check is conducted even if the firearm transfer does not occur.

51.     ATF Form 4473 completed by ANDRUCHUK on November 17, 2021 indicates that he answered "**NO**" to Question 21.e, which asks the following:

"Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medical or recreational purposes in the state where you reside."

52.     Prior to signing and dating the ATF Form 4473, the Transferee/Buyer must read and acknowledge the following statement:

"I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 21.b. through 21.k. is prohibited from receiving or possessing a firearm. I understand that a person who answers "yes" to question 21.l.1. is prohibited from receiving or possessing a firearm, unless the person answers "yes" to question 21.l.2. and provides the documentation required in 26.d. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law."

53.     ANDRUCHUK provided his signature and date of November 17, 2021, acknowledging that he read and understood the notices, instructions, and definitions on the ATF Form 4473.

*Review of Firearm Transaction Records – December 11, 2021*

54.     I reviewed an ATF Form 4473 that was completed by ANDRUCHUK on December 11, 2021 at MTR Machining Inc/MTR Guns & Ammo, located at 229 Quaker Hwy, North Smithfield, RI 02896 for the purchase of two firearms.  It should be noted

that this Form 4473 was completed by ANDRUCHUK **one day after** the Tractor Supply store incident in Millbury.  On this ATF Form 4473, ANDRUCHUK again answered "**NO**" to question 21.e. (See Paragraph 51). ANDRUCHUK's RI State Application to purchase the two firearms was denied by the Burrillville Police Department, and as a result the firearms were not transferred to him.

      55.     As noted above, ANDRUCHUK attempted to purchase two firearms on December 11, 2021, one of which was a North American Arms, Model: NAA PUG-PVDC .22 Caliber Revolver, Serial No. DTP798. This firearm is the same manufacturer and similar model to the silver North American Arms .22 caliber revolver Serial No. L228008 recovered the previous day, December 10, 2021, by the Millbury Police Department from the Tractor Supply store and pictured below:



Posted below is a photograph of the North American Arms, Model: NAA PUG - PVDC .22 Caliber Revolver, Serial Number: DTP798, that ANDRUCHUK attempted to purchase on December 11, 2021:



*Burrillville Police Department Arrest – February 24, 2022*

56.    On February 24, 2022, ANDRUCHUK was arrested by the Burrillville Police Department for violations of Rhode Island General Law 11-47-50 (Firing in a Compact Area) after a complaint was made to the Burillville Police Department that gun shots and projectiles were passing dangerously close to a neighbor's family and property. Upon arrival at ANDRUCHUK's residence, officers heard multiple gun shots coming from ANDRUCHUK's property, and witnessed several rounds pass close by as they were standing in the driveway of a neighbor's residence. The rounds crashed through the tree branches, approximately four feet above the officers' heads.

ANDRUCHUK admitted to the officers that he was shooting his firearms, and explained that he was teaching his wife how to shoot.

57.     ANDRUCHUK's arrest and his processing at the Burrillville Police Department, yielded four firearms, ammunition, a cellular telephone, and suspected drugs that were located on his person or in his possession. Investigators conducted a field test on the suspected drugs, which yielded positive results for Methamphetamines. According to the Burrillville Police Department, the suspected drugs weighted approximately .5 to 1 gram. I was provided with photographs by the Burrillville Police Department of the firearms and drugs located on ANDRUCHUK's person, which I posted below.





***Probable Cause to Believe ANDRUCHUK is an Unlawful Drug User in***
***Possession of Firearms.***

58.     Based upon the information noted above regarding ANDRUCHUK'S
recent purchases of large quantities of firearms, and his pattern of unlawful
use/possession of controlled substances, including admitted marijuana use in April
2018, illegal purchase of drugs and admission of a substance-abuse problem in August
2019, the suspected possession of drugs while in possession of firearms in December
2021, possession of drugs resulting from a trash pull in February 2022, and possession
of drugs and firearms during his arrest on February 24, 2022, I believe there is probable
cause to believe ANDRUCHUK is both an unlawful user of controlled substances and is
presently in possession of firearms.

***Probable Cause to Believe that ANDRUCHUK made False Statements as to***
***Material Fact***

59.     Based upon the information noted above, regarding ANDRUCHUK'S pattern of unlawful use/possession of controlled substances (see above) and his answer of "NO" to Question 21.e. of the ATF Form 4473 on November 17, 2021, and December 11, 2021, I believe there is probable cause to believe ANDRUCHUK provided False Statements as to a Material Fact on ATF Forms 4473 to an FFL and that those statements were made in records that were required by law to by kept and maintained by the FFL.

**PROBABLE CAUSE THAT EVIDENCE, FRUITS, AND INSTURMENTALITIES OF THE TARGET OFFENSES WILL BE FOUND AT THE TARGET LOCATION**

60.     For the following reasons, there is probable cause to believe that ANDRUCHUK resides at the residence:

According to information provided by the Town of Burrillville Rhode Island, Ronald and ███████ Andruchuk purchased the residence of 1746 Tarkiln Road Burrillville, RI 02830 (approximately eleven acres of land) on November 24, 2021, for four hundred eighty-five thousand dollars. Utilities records show that ANDRUCHUK has an active account at 1746 Tarkiln Road Burrillville, RI 02830. Surveillance during the months of January and February of 2022, has shown ANDRUCHUK leaving the area of 1746 Tarkiln Road and arriving at his place of employment in Providence RI.  Evidence retrieved during the January 28, 2022, trash pull indicates Ronald and ███████ ANDRUCHUK occupy the residence.

61.     Authorization is sought to search the residence for and seize the following:

a.   Firearms, ammunition, documentation indicating firearm purchases/possession of firearms by ANDRUCHUK, because as set forth above there is probable cause to believe that ANDRUCHUK is currently in possession of firearms at his residence and based upon training and

experience and through conversations with senior agents, individuals
who own firearms commonly store them in their place of residence;

b. Amphetamines, oxycodone, cocaine, marijuana, and any other controlled
substances, bagging or packaging materials, digital scales, or any other
drug paraphernalia indicative of illicit drug use because, as set forth in
this affidavit, there is probable cause to believe that ANDRUCHUK is an
active unlawful user of controlled substances, and based upon training
and experience, and conversations with senior agents, unlawful users of
controlled substances keep their drugs and the associated drug
paraphernalia in their residences;

c. Cellular or computer devices, including Target Phone #1 (which may be
the cellular telephone seized by Burrillville Police Department), because
such devices are commonly kept by users in their residences or on there
person. ANDRUCHUK used his cell phone, Target Phone #1, as a means
of contact on the Forms 4473 he filed in relation to his firearm purchases.
Additionally, based on training and experience, I know that straw
purchasers of firearms and firearms traffickers often use computers or
cellular phones to contact prospective purchasers of their firearms and to
further their illicit firearms trade. Also, based on training and experience, I
know that unlawful users of controlled substances frequently place orders
with their sources of supply via cellular phone either by text messages or
telephone calls, and cellular devices retain evidence of such
communications long after the conversation or communication has
occurred.

62.     Authorization is sought to search ANDRUCHUK'S person because
common sense, everyday experience and my law enforcement training advises that

cellular telephones, drugs, and firearms are often kept on the person of the owner of such items and materials.

63.     Authorization is sought to search ANDRUCHUK'S current vehicle - a 2008 Silver Jeep Compass SUV bearing RI Temporary Registration "204766" (VIN # 1J8FT47W88D551597). This vehicle was recently purchased by ANDRUCHUK and registered in his name in February 2022. Although ANDRUCHUK was driving a different vehicle on December 10, 2021, the night of the Millbury incident, ANDRUCHUK's actions that evening, and on past occasions documented in police reports, demonstrate that he will transport and possess both firearms and illicit controlled substances in his motor vehicles. Further, based upon training and experience, and through conversations with senior agents, and common sense, I know that cellular telephones, drugs, and firearms are often kept in the vehicle or the user/possessor.

64.     Authorization is sought to search Target Phone #1 for and seize text messages, messaging records, photographs and videos, GPS data, social media applications, electronic mail, contact lists, toll records, banking and notation applications, and web browsing data because such data is commonly maintained on cellular telephones and in this case there is probable cause to believe that such data will contain evidence of ANDRUCHUK's unlawful use of controlled substances while in possession of firearms and purchase, or attempted purchase, of firearms while being an unlawful user of controlled substances.

## BIOMETRIC ACCESS TO DEVICES

65.     This warrant permits law enforcement to compel ANDRUCHUK to unlock any DEVICES requiring biometric access subject to seizure pursuant to this warrant.  The grounds for this request are as follows:

a.      I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password.  These biometric features include fingerprint scanners, facial recognition features and iris recognition features.  Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

b.      If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints.  For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device.  Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device.  The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c.      If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face.  For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face.  The device's front-facing camera then analyzes and records data based on the user's facial characteristics.  The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face.  Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

d.      If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises.  For example, on

certain Microsoft devices, this feature is called "Windows Hello."  During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face.  The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises.  The device can then be unlocked if the infrared-sensitive camera detects the registered irises.  Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

e.     In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password.  Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents.  This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

f.     As discussed in this Affidavit, your Affiant has reason to believe that one or more digital devices will be found during the search.  The passcode or password that would unlock the Target Devices subject to search under this warrant currently is not known to law enforcement.  Thus, law enforcement personnel may not otherwise be able to access the data contained within the Target Devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

g.     I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled.  This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time.  For example, Apple devices cannot be unlocked using Touch ID when: (1) more than

48 hours has elapsed since the device was last unlocked; or (2) when the device has not been unlocked using a fingerprint for 8 hours *and* the passcode or password has not been entered in the last 6 days.  Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

h.    Due to the foregoing, if law enforcement personnel encounter any Target Devices that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, this warrant permits law enforcement personnel to: (1) press or swipe the fingers (including thumbs) of ANDRUCHUK to the fingerprint scanner of the Target Devices found at the Target Locations; (2) hold the Target Devices found at the Target Locations in front of the face of  ANDRUCHUK and activate the facial recognition feature; and/or (3) hold the Target Devices found at the Target Locations in front of the face of ANDRUCHUK and activate the iris recognition feature, for the purpose of attempting to unlock the Target Devices in order to search the contents as authorized by this warrant.  The proposed warrant does not authorize law enforcement to compel ANDRUCHUK to state or otherwise provide the password or any other means that may be used to unlock or access the Target Devices. Moreover, the proposed warrant does not authorize law enforcement to compel ANDRUCHUK to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the Target Devices.

## **CONCLUSION**

66.    Based upon the above, I believe that there is probable cause to believe that ANDRUCHUK has and is committing the following offenses: possession of firearms

while being a prohibited person, to wit, an unlawful user of or addicted to any controlled substances, in violation of 18 U.S.C. § 922(g)(3), making false statements in an application to purchase firearms, in violation of 18 U.S.C. § 922(a)(6), and causing false records to be kept by a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) and, consequently request that a criminal complaint and arrest warrant be issued on said offenses.

67.     Furthermore, probable cause exists to believe that evidence, fruits, and instrumentalities of these Subject Offenses will be found in the places set forth in Attachment A, and permission is sought to search in those places for the items listed in Attachment B.

_Justin Delaney_
_____
Justin Delaney
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

---

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by:

**Sworn telephonically and signed electronically**
_____.
(specify reliable electronic means)

**February 24, 2022**                          _____
Date                                                    Judge's signature

**Providence, Rhode Island**                 **Patricia A. Sullivan, USMJ**
City and State                                        U.S. Magistrate Judge

---

**This affidavit was sworn and signed on Feb. 24, 2022.  This redacted version was signed on Feb. 25, 2022.**

## **ATTACHMENT A**

## **DESCRIPTION OF LOCATIONS TO BE SEARCHED**

Things or places to be searched:

i) the residence of 1746 Tarkiln Road in Burrillville, Rhode Island, which is further described as an off-white-colored two-story residence, with black shutters to include any sheds or similar storage facilities that are present on the property. The residence features a stone exterior on the first floor with four white pillars, and a stone walkway leading to a red colored front door;

ii) the person of Ronald ANDRUCHUK (Y.O.B. 1984);

iii) computers, cellular devices, and the cellular telephone assigned call number (401) 390-8594 ("Target Phone #1") found in ANDRUCHUK's residence or on his person. Target Phone #1 is believed to be Ronald ANDRUCHUK's cellular telephone and may be the cellular telephone seized by Burrillville Police during the arrest of ANDRUCHUK.;

iv) a 2008 Silver Jeep Compass SUV bearing RI Temporary Registration (204766), (VIN# 1J8FT47W88D551597).

## ATTACHMENT B

## ITEMS TO BE SEIZED

I.    All records, in whatever form, and tangible objects that constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(g)(3), 18 U.S.C. § 922(a)(6), and 18 U.S.C. § 924(a)(1)(A), including:

   i.    Any and all firearms, ammunition, documentation indicating firearm purchases/possession of firearms by ANDRUCHUK, because as set forth above there is probable cause to believe that ANDRUCHUK is currently in possession of firearms at his residence or inside his vehicle;

   ii.   Amphetamines, oxycodone, cocaine, marijuana, and any other controlled substances, bagging or packaging materials, digital scales, or any other drug paraphernalia indicative of illicit drug use;

   iii.  On any computer or cellular device, any text messages, messaging records, photographs and videos, GPS data, social media applications, electronic mail, contact lists, toll records, banking and notation applications, and web browsing data relating to the usage, possession, purchase, or sale of controlled substances, or the usage, possession, purchase or sale of firearms.

   iv.   For any computer hardware, computer software, mobile phones, or storage media called for by this warrant or that might contain things otherwise called for by this warrant ("the computer equipment"):

      a.   evidence of who used, owned, or controlled the computer equipment;
      b.   evidence of the presence or absence of malicious software that would allow others to control the items, and evidence of the presence or absence of security software designed to detect malicious software;

     c.   evidence of the attachment of other computer hardware or storage media;

     d.   evidence of counter-forensic programs and associated data that are designed to eliminate data;

     e.   evidence of when the computer equipment was used;

     f.   passwords, encryption keys, and other access devices that may be necessary to access the computer equipment;

     g.   records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage; and

     h.   records evidencing the use of the Internet Protocol addresses to communicate over the Internet.

II.     All computer hardware, computer software, and storage media, including Target Phone #1 assigned call number (401) 390-8594.  Off-site searching of these items shall be limited to searching for the items described in paragraph 1.

## BIOMETRIC ACCESS TO DEVICES

During the execution of the search of the Target Locations described in Attachment A, law enforcement personnel are also specifically authorized to compel ANDRUCHUK to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

(a)     any of the Target Devices found at the Target Locations, and

(b)     where the Target Devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments,

for the purpose of attempting to unlock the Target Devices' security features in order to search the contents as authorized by this warrant.

This warrant does not authorize law enforcement personnel to compel any other individuals found at the Target Locations to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any Target Device.  Further, this warrant does not authorize law enforcement personnel to request that ANDRUCHUK

to state or otherwise provide the password or any other means that may be used to unlock or access the Target Devices, including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the Target Devices.

## DEFINITIONS

For the purpose of this warrant:

A.     "Computer equipment" means any computer hardware, computer software, mobile phone, storage media, and data.

B.     "Computer hardware" means any electronic device capable of data processing (such as a computer, smartphone, cell/mobile phone, or wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

C.     "Computer software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a username; or a password), whether stored deliberately, inadvertently, or automatically.

D.     "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, or memory card).

E.     "Data" means all information stored on storage media of any form in any storage format and for any purpose.

F.     "A record" is any communication, representation, information or data.  A "record" may be comprised of letters, numbers, pictures, sounds or symbols, and shall include any form of computer or electronic storage (such as flash memory or other media that can store data and any photographic form). including email, text messaging, instant messaging, or other communications, and including any content that may be synchronized to or on the device from any service or application utilized by the subject all of the foregoing items of evidence in whatever form and by whatever means they

may have been created or stored.

### RETURN OF SEIZED COMPUTER EQUIPMENT

If the owner of the seized computer equipment requests that it be returned, the government will attempt to do so, under the terms set forth below. If, after inspecting the seized computer equipment, the government determines that some or all of this equipment does not contain contraband or the passwords, account information, or personally-identifying information of victims, and the original is no longer necessary to retrieve and preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copies authenticity (but not necessarily relevancy or admissibility) for evidentiary purposes.

If computer equipment cannot be returned, agents will make available to the computer system's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, or personally-identifying information of victims; or the fruits or instrumentalities of crime.

For purposes of authentication at trial, the Government is authorized to retain a digital copy of all computer equipment seized pursuant to this warrant for as long as is necessary for authentication purposes