UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 22-MJ-11PAS |
| v. | |
| RONALD ANDRUCHUK | |

GOVERNMENT'S EMERGENCY MOTION FOR STAY
AND REVOCATION OF ORDER OF RELEASE

Pursuant to 18 U.S.C. § 3145(a)(1),[1] the United States respectfully requests that the Court revoke the Order of Release (ECF Dkt. #8) entered by Magistrate Judge Patricia A. Sullivan in the above-captioned case. The United States moved for detention under 18 U.S.C. § 3142(f)(1)(E) because the defendant poses a danger to the community. The defendant, who is a prohibited person under federal law by reason of his substance abuse, amassed an arsenal of weaponry over six months, and he proceeded to use those weapons repeatedly in ways that endangered his family and his community. His acquisition of over 200 firearms and his substance abuse is not only criminal, but has caused alarm for law enforcement, store personnel, neighbors, and family. The conditions of release ordered by Judge Sullivan are inadequate to protect the public from this defendant. Accordingly, the United States respectfully requests that the Court

---

[1] Section 3145(a), provides that "[i]f a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court – (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."

revoke the Order of Release. Further, the United States requests that the Court stay Judge Sullivan's Order of Release until the Court has considered the United States' motion.

FACTS

On February 24, 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") obtained an arrest warrant for the defendant for being a prohibited person in possession of firearms, in violation of 18 U.S.C. § 922(g)(3), false statements in an application to purchase firearms, in violation of 18 U.S.C. § 922(a)(6), and causing false records to be kept by a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A).[2] The combined statutory maximum penalty of imprisonment for these offenses is 25 years, and if convicted after trial, the defendant will face an estimated guideline range of 51-63 months imprisonment.

The defendant was found in possession of over 200 firearms and thousands of rounds of ammunition on February 24, 2022, during the execution of a search warrant at his residence in Burrillville, RI. Among the items seized from the defendant's home, which he shared with his wife and three young sons, were handguns, rifles, a flame

---

[2] The United States relies on the facts included in the affidavit of Special Agent Justin Delaney offered in support of the complaint and arrest warrant which is attached to this motion as Exhibit 4. That affidavit chronicles the evidence garnered regarding the defendant's substance abuse over the last several years and includes details of the defendant's recent criminal misconduct at a Tractor Supply Store in Millbury, MA, in which the defendant is believed to have been in possession (and carrying without a license) two firearms and user quantities of cocaine, oxycodone, and amphetamine. The affidavit also details his history of purchasing over 160 firearms and not disclosing his drug use.

thrower, ammunition of differing calibers, and suspected narcotics. See Exhibits 1 and 2. Likewise, at the time of his arrest, law enforcement seized four handguns, a K-bar knife, ammunition magazines and suspected methamphetamine from his person.[3]

As described in the complaint affidavit, the defendant began building his arsenal in or about July 2021, approximately two months after his wife contacted authorities regarding her concerns surrounding his mental health and behavior. He continued to amass weaponry over the next six months, falsely denying his drug use each time he purchased a firearm.

In December 2021, the defendant purchased his home in Burrillville, and according to his neighbors, he began to fire his weapons during the day and at night. See Exhibit 5 and 7, Statements, and Exhibit 8, Video of Panicked Neighbors Responding to Bullets Fired Towards Their Property. On nine separate occasions between December 2021 and February 24, 2022, neighbors, frightened and alarmed, called the Burrillville Police Department ("BPD") regarding the defendant's activities. Neighbors complained that the defendant fired bullets onto their property and that they were in fear for their safety.

As described in the BPD reports attached as Exhibit 3, officers responded to the defendant's neighbor's residence on February 23, 2022, because the neighbor alleged

---

[3] At the initial appearance, the undersigned Assistant United States Attorney proffered to the Court, based on initial reports, that the defendant was arrested in a bullet proof vest. Upon further investigation, the undersigned learned that the defendant was arrested wearing a tactical vest, similar to the gear often worn over bullet proof vests. The defendant did not have on a bullet proof vest or any armored plates.

3

that the defendant was once again firing rounds on his property. While standing in the driveway of the neighbor's residence, officers observed rounds whistling through the trees, and in one instance through branches several feet above their heads.

These observations prompted the officers to make contact with the defendant for the second time in a week (it should be noted that prior to February 21, 2022, officers had been unable to make contact with the defendant when responding to complaints despite evidence that he was at home while they were attempting to investigate). During their interaction on February 23, 2022, the officers explained to the defendant that he needed to use his firearms in a safe manner and that it was not acceptable for rounds to cross onto his neighbor's property. The defendant acknowledged and appeared to understand their request.

The next day, February 24, 2022, BPD obtained an arrest warrant for the defendant for state misdemeanor charges of firing in a compact area. The defendant's neighbors also came to the police station that day, one in tears, to provide a statement. See Exhibit 5 and 7, Statements, and Exhibit 3, Narrative of Patrolwoman Kathleen Kelley.

Before officers were able to execute the arrest warrant, another 911 call came into the police station regarding the defendant's shooting. BPD officers proceeded to the defendant's house where they could hear the defendant's wife yelling for him. He came running from the backyard, and entered his residence through the back door, while officers identified themselves and yelled for him to come out. He could be heard shuffling around in the residence for several moments before he exited his side door

4

and approached the officers, at which point he was taken into custody. The defendant was wearing tactical gear and what he referred to as his, "battle belt." See Exhibit 3, Witness Statement of Officer Harris. As described above and in the attached reports, during the post-arrest search of the defendant, Officer Harris located four handguns, ammunition, a combat knife, and white powder in a baggie wrapped in duct tape. Officer Harris recovered one firearm from the defendant's belt and the knife from the defendant's chest rigging, and he located the remaining firearms in cargo pouches in the "battle belt." He found the powder, which later field tested positive for methamphetamine, in one of the cargo pouches as well.

On February 27, 2022, the defendant's wife entered a gun store in Coventry, RI, purportedly to sell gun cases, gun bags, and shooting supplies. As the store employee inventoried the items brought into the store by Ms. Andruchuk, he located a Glock handgun in one of the pockets of one of the shooting bags. The store employee promptly notified BPD LT Jason Cahill, who notified federal authorities to arrange for the seizure of the weapon. See Exhibit 6 – Statement of LT Jason Cahill.

ARGUMENT

The facts of this case demonstrate beyond any doubt that the defendant is a danger to the community. Given his unbounded fascination with firearms, his reckless and irresponsible storage and shooting of them, his insistence on carrying them in a concealed fashion in public without a license, his refusal to cease his activities even after repeated efforts by law enforcement to address the danger, and his substance abuse, no conditions of release can assure that his family and his community will be safe during

5

the pendency of these proceedings.

   1. **Nature and Circumstances of the Offense.**

As the search warrant photographs attached to Exhibit 1 illustrate, the defendant's arsenal was not only massive, but his maintenance of his weaponry was dangerous. For someone who shared a home with two five year-old boys and one ten year-old boy, it is inconceivable that any one would leave weapons lying about on tables, on the floor, in cabinets, and in safes with doors wide open. Investigators even recovered a firearm and a magazine in the backyard. Ammunition was strewn about the defendant's house and additional weapons were secreted behind a wall clock and in what appeared to be a book, but what was actually a container capable of concealing a firearm. As Exhibit 2 depicts, the defendant had what officers identified as a flame thrower left laying on a counter. The accumulation of so many weapons by a poly-drug user in such a short period of time, coupled with reckless and inexplicable storage and use of those weapons, suggests that the defendant was spiraling out of control and highlights the danger posed by the defendant.

The reports of the BPD show that the defendant was hyper-security conscious and secretive about his activities. He had multiple security cameras and motion detectors, which officers believed alerted him to their approach as they sought to address neighbor complaints over the last two months. Until February 21, 2022, despite multiple attempts, BPD was unable to make contact with him.

His behavior at the Tractor Supply Store in Millbury in December further raises the specter of a defendant who does not respect the law and seeks to avoid law

enforcement. His repeat appearances at the store and his unusual behavior while there worried the employees such that they reached out to law enforcement. The defendant disregarded Massachusetts law, as well as federal law, when he took two concealed handguns without a permit (and cocaine, oxycodone and amphetamine) into the store. Then, when he became aware of the Massachusetts trooper, he abandoned those firearms in a ceiling tile in the bathroom, along with his drugs.

The defendant's behavior while using drugs and possessing firearms is the very reason federal law deems him a prohibited person. But his case goes beyond the mere possession of firearms while being a prohibited person because this defendant has shown that not only is he willing to carry them to places he should not, and store them in ways he should not, but also, he is willing to use those firearms repeatedly in a dangerous fashion.

2. **Weight of the Evidence.**

The weight of the evidence in this case is strong. The defendant has been found by law enforcement on three occasions since April 2018 in personal possession of controlled substances (marijuana in the April 2018 incident; oxycodone, morphine and naloxone in the 2019 incident; and suspected methamphetamine at the time of his arrest). In December 2021, the defendant hid firearms, oxycodone, amphetamine and cocaine in a ceiling tile at the Tractor Supply Store. Additionally, during a trash pull at his residence January 28, 2022, officers recovered fragments which field tested positive for amphetamine. And, during the execution of the search warrant, investigators located pills similar to those found in the ceiling tile at the Tractor Supply Store, and

7

there was evidence that someone had been crushing some of those pills.[4] The defendant also admitted that he had a substance abuse problem when arrested in 2019.

When investigators attempted to interview the defendant post-arrest, they noted that the defendant was pale and clammy, his mood changed from calm to crying during their meeting, he had "bags" under his eyes, he had lost a lot of weight since his prior contact with the Cranston Police Department, and in their opinion, he was under the influence or had recently been under the influence of a controlled substance. See Exhibit 9, Photograph. Although the defendant refused to answer questions regarding his drug use when questioned by the probation officer who was assessing his suitability for pretrial release, it is clear that this defendant has a substance abuse problem.

The evidence that he possessed firearms is overwhelming. See Exhibit 1, Photographs attached to Agent Delaney's affidavit.

3. **History and Characteristics of the Defendant.**

Since May of 2021 when the defendant's wife called authorities raising concerns about the defendant's mental health, the defendant's behavior has raised repeated red flags for civilians and law enforcement alike. Federal authorities fear what the defendant might do; what he has already done not only violates federal and state law but has frightened law enforcement and civilians.

Tractor Supply Store employees have noted his odd behavior and reported him to a Massachusetts State Trooper; ATF agents have been gathering evidence of his

---

[4] As stated at the initial appearance, the field test of those pills was inconclusive, but they will be sent to the laboratory for testing.

prolific firearms purchasing and his repeated false statements on federal forms; neighbors, frightened by gun shots and afraid for their safety, have called BPD for help; and BPD officers have been called out nine times in the last two months to address concerns regarding the defendant.

Repeatedly, BPD officers have had to approach his residence after calls of shots fired. They've witnessed the motion detectors and security cameras, among other security features that have appeared out of the ordinary to investigating officers. See Exhibit 3, Statement of SGT Hughes. On most occasions, BPD officers responding to calls of shots fired have been unable to make contact with the defendant despite evidence that he was at home. Officers have seen that their approach triggers the motion detectors zip tied to the trees. If released, it will be federal probation officers who will have to approach the defendant's residence in this manner.

**4. Nature and Seriousness of the Danger.**

Despite what appears to be an investigative success story resulting in a crisis averted, the Court can have no confidence that all firearms were located. Law enforcement seized approximately forty more firearms than they knew the defendant had purchased between July and November 2021. The defendant owns over ten acres of land, some of which is wooded, providing many locations in which firearms could be stashed. From the search, agents learned that he stored firearms in unusual locations such as behind a wall clock and in what appeared to be a book. It is clear that the defendant had at least one firearm that was initially purchased by another person, and he had a flame thrower. And, significantly, as LT Cahill's statement illustrates, law

9

enforcement now knows for certain that they missed at least one firearm during the search. See Exhibit 6.

Even if law enforcement has now seized all firearms in the defendant's possession, the Court should have no confidence that he will not obtain another. The defendant has an admitted zeal for firearms that is coupled with a willingness to make false statements to acquire them and his wife's willingness to make false statements regarding his possession of them. See Exhibit 1, Affidavit of Agent Delaney in which the defendant's wife told Agent Delaney that the defendant secures his firearms in the home.

Judge Sullivan considered establishing exclusion zones around firearm dealers as a condition of release; however, it appears that this is impractical given the number of locations in the state at which the defendant might acquire firearms. Even if that idea were feasible, it does not protect the public from the defendant's ability to access firearms through others. Considering all of the above, the United States fears the defendant will gain access to additional firearms if released at this time.

Additionally, the nature and extent of the defendant's substance abuse problem is not known to probation officers or investigators. In 2019, he admitted he had a problem, but additional information regarding his substance abuse problem is limited to instances in which law enforcement have seized narcotics from his person or from items that had been in his possession. This unknown threat will make it more difficult for the probation office to monitor and address the continuing danger posed by the defendant.

CONCLUSION

The United States has taken the rare and unusual step of appealing the Magistrate Judge's order of release. While the United States appreciates the thought and concern Judge Sullivan has put into trying to achieve a compromise solution to the problem posed by the defendant, the United States respectfully disagrees. The defendant's behavior, both criminal and non-criminal in the months leading up to his arrest, demonstrate that he is a threat to his family and to his community. If he is released, his neighbors will live in fear that they or their children may be harmed as the case proceeds. There is no way for BPD or for the probation office to quench the defendant's clear desire for firearms and they cannot monitor him day and night; his access to firearms cannot be effectively contained; his substance abuse problem cannot be adequately addressed since he has not even admitted his problem since 2019; and, he has shown that he will be difficult to monitor given his secretive behavior and his clear willingness to ignore the law and law enforcement. The defendant's arrest may be a situation of crisis averted, but it is far from clear that the danger has been eliminated.

Respectfully submitted,

ZACHARY A. CUNHA
United States Attorney

/s/ Sandra R. Hebert
Sandra R. Hebert
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000 (tel) / 401-709-5001 (fax)
Sandra.hebert@usdoj.gov

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 28th day of February 2022, I caused the within Government's Motion to Revoke to be filed electronically and it is available for viewing and downloading from the ECF system.

               /s/ Sandra R. Hebert
               Sandra R. Hebert
               Assistant U.S. Attorney
               United States Attorney's Office
               50 Kennedy Plaza, 8th Floor
               Providence, RI 02903
               401-709-5000 (tel)
               401-709-5001 (fax)
               Sandra.hebert@usdoj.gov